CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2018 APR 20 PM 1:28
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| KENNETH R. BIRDO, (TDCJ No. 01698524) Plaintiff, V. B.BARNETT, Assistant Regional Director, TDCJ Region IV, et al., Defendants | § § § § § § § § § § § | CIVIL ACTION NO. 1:16-CV-108-BL |

## OPINION and ORDER OF DISMISSAL
## UNDER 28 U.S.C. §§ 1915A & 1915(e)(2)(B) [1]

This case is before the Court for review of pro-se-inmate/plaintiff Kenneth R. Birdo's pleadings under the screening provisions of 28 U.S.C. §§ 1915A and 1915(e)(2)(B). After review of the pleadings, the Court finds and concludes that all claims must be dismissed.

### I. BACKGROUND/PLEADINGS

Plaintiff initially filed a form civil rights complaint with attachment pages, naming five defendants associated with the Texas Department of Criminal Justice ("TDCJ") and the TDCJ-French Robertson Unit: Assistant Regional Director B. Barnett, Assistant Warden Adam R. Gonzales, Grievance Investigator Christine N. Dewbre, Captain Adrian L. Correll, and Sergeant Dwight T. Robertson. Complaint, at Style, § IV(B) (doc. 1). After review of this pleading, the Court issued an order directing Plaintiff to file completed answers to the Court's questionnaire as a more definite statement, which Plaintiff did by filing a more definite statement. Order, (doc. 12); More Definite Statement ("MDS") (doc. 13.) Thus, the complaint and more definite statement are the pleadings subject to the Court's review.

---

[1] Plaintiff Kenneth R. Birdo has consented to the disposition of this case by a magistrate judge under 28 U.S.C. § 636(c). (Doc. 15.)

The statement of claim section within Plaintiff's complaint recites challenges to two disciplinary proceedings arising from a September 6, 2014 event. Compl. at 8 (doc. 1.) Plaintiff writes that on that date after Defendant Officer Robertson allowed another offender out of his cell with a bottle of a liquid substance, the inmate threw that substance (alleged to contain feces and urine) on Birdo. *Id.* Birdo alleges that when Robertson later allowed the same inmate to make a return pass in front of Birdo's cell, Birdo threw a "watery oat-meal at [the inmate] and defendant Robertson" causing Robertson to take off his vest. *Id.* at 9. Birdo writes that Robertson in turn, falsified an incident report by charging Birdo himself with "throwing feces on [Robertson]." *Id.* In response to the Court's questions in the order for more definite statement, Birdo provided a copy of the two Disciplinary Report and Hearing Record documents for case numbers 20150007709 and 20150135436, and each report listed the charged offense being that "Kenneth Birdo . . . did expose myself Dwight Robertson CO III to feces and urine by throwing it on me through his cell window." MDS, attachments 5-6 (doc. 13).

With regard to the first disciplinary case, No. 20150007709, Birdo complains of Defendant Dewbre as counsel substitute allegedly falsifying whether he was provided a copy of the report, and denying him the right to be present at the hearing. Compl, at 9 (doc. 1); MDS at 3 (doc. 13). Birdo contends that Defendant Captain Corrrell, acting as the hearing officer in the first case, denied him notice of the charges, denied him the right to be present, to provide witnesses, and to confront the charging officer. Compl, at 9 (doc. 1); MDS at 3 (doc. 13). Plaintiff Birdo was found guilty and assessed punishments of fifteen days recreation restriction, thirty days commissary and property restriction, and placement as a Line 3 classification. Compl, at 9 (doc. 1); MDS at 1, 5 (doc. 13). Birdo alleges that Defendant Gonzales, upon reviewing the Step 1 grievance challenging the first disciplinary hearing, knowingly failed to correct the errors, and denied Birdo's Step 1 grievance. Compl., at 9 (doc. 1). Birdo then filed a Step 2 grievance and asserted that he was denied the right

2

to present evidence and witnesses, and was denied the right to be present at the hearing since he was at the time then housed for psychiatric analysis. Compl. at 14 (Step 2 Grievance Attachment) (doc. 1). Review of the response to the Step 2 grievance shows that disciplinary case number 20150007709 was overturned and Birdo's record corrected, but with express notice of an option for the case to be reheard. *Id.* at 15 (doc. 1).

Birdo reports that the second disciplinary case (No. 20150125436) was then charged on January 12, 2015 arising from the same September 6, 2014 incident. *Id.* at 9; MDS at 4 (doc. 13). A review of the two Disciplinary Report and Hearing Records reveals that the charges were exactly the same. MDS at 5-6 (doc. 13). Birdo recites, and the hearing record confirms, that Birdo was notified of the right to appear, and did appear at the January 29, 2015 hearing. Compl. at 10, (doc. 1); MDS at 5 (doc. 13). Birdo notes that he raised with Dewbre and Hearing Officer Correll the claim that he could not be subjected to a rehearing, but his challenges were ignored and the case was reheard, this time with Birdo present. Compl. at 10, (doc. 1); MDS at 5 (doc. 13). The second hearing resulted in the same punishment outcome, fifteen days recreation restriction, thirty days commissary and property restriction, and placement as a Line 3 classification. MDS at 5 (doc. 13). Birdo recites that he filed a Step 1 grievance that was denied by Defendant Gonzales, and then a Step 2 grievance to Defendant Assistant Regional Director Barnett. Compl. at 10 (doc. 1). Birdo alleges that in both grievances, he argued that the holding of the second disciplinary hearing, after the first hearing was overturned on the basis that he had not been given proper notice, was in violation of the TDCJ Handbook of Rules and Regulations, in violation of his right to due process of law under the Fourteenth Amendment, and in violation of the Eighth Amendment. Compl. at 10, 16-17 (Step 2 Grievance attachment)(doc. 1); MDS at 2 (doc. 13). Plaintiff seeks several forms of relief, including compensatory damages, punitive damages, a declaratory judgment, and an injunction. Compl. at 11 (doc. 1).

## II. PRELIMINARY SCREENING

Plaintiff is an inmate who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327-28. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal for failure to state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

## III. ANALYSIS

A.   **Failure to State a Claim Upon Which Relief May be Granted**

(I.) Claims Attacking Actions Taken During Disciplinary Process

As noted, Plaintiff was charged with two separate disciplinary cases arising from the same underlying charge that he threw feces and urine upon Officer Robertson. And although the first

4

disciplinary case was overturned and set aside as a result of Birdo's pursuit of a Step 2 grievance raising alleged inadequacies in the first hearing process, Birdo was again charged with the exact same conduct in case number 20150135436. Birdo was found guilty, and received punishments of fifteen days recreation restriction, thirty days commissary and property restriction, and placement as a Line 3 classification. Birdo raises claims against three of the defendants for their actions in the disciplinary process. He claims that Officer Robertson violated his right to due process of law by falsifying the report, and failing to recite the underling details of how Birdo was the victim of actions by another offender. MDS at 4 (doc. 13); Compl. at 5 (doc. 1). He claims that Christine Dewbre violated his right to due process of law in acting as his counsel substitute and falsifying documents, and by lying on the disciplinary report and conspiring with the hearing officer to prevent him from being at the first hearing. MDS at 3 (doc. 13). He contends that Captain Adrian Correll violated his right to due process of law by denying him the right to a fair hearing, disregarding the applicable rules and regulations governing disciplinary proceedings, and conspiring with Dewbre to deprive him of a fair hearing process. MDS at 3 (doc. 13). And Birdo makes more general allegations against all defendants that they failed to follow TDCJ rules applicable to and governing the disciplinary hearing process, including a particular claim that defendants violated a rule applicable to "Notice of Charges" that bars a rehearing of an overtured disciplinary conviction when the offender did not receive notice of the charges and hearing. MDS at 2 (doc. 13.)

The Court first notes that TDCJ internal rules and regulations do not alone create federally protected rights. *See Sandin v. Conner,* 515 U.S. 472, 487 (1995); *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) ("A state failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met.'" (quoting *Brown v. Texas A & M Univ.*, 804 F.2d 327, 225 (5th cir. 1986))). And a prison official's failure to follow the prison's own policies, procedures, or regulations does not, without more,

5

establish a violation of a constitutional violation. *Lewis v. Secretary of Public Safety and Corrections, et al.*, 870 F.3d 365, 369 (5th Cir. 2017) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) and *Hernandez v. Estelle*, 788 F.2d 1154, 158 (5th Cir. 1986). Thus, Plaintiff's claims based solely on the defendants alleged violation of state rules does not state a constitutional violation.

The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV § 1. A prisoner's liberty interest, however, is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483 (citations omitted). In *Sandin v. Connor,* the Court held that a prisoner's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* In light of *Sandin,* the Fifth Circuit held that, "administrative segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (per curiam); *see also Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1995) (affirming district court's dismissal as frivolous prisoner's claim that administrative segregation resulting from his classification as a gang member violated a cognizable liberty interest); *Orelana v. Kyle,* 65 F.3d 29, 31-32 (5th Cir. 1995) (noting that "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status")(internal citations and footnote omitted).

Furthermore, the Fifth Circuit, and other courts in this circuit, have expressly rejected claims that a punishment including loss of 30 or more days of commissary/recreation/property privileges and 15 days of solitary confinement, triggers a liberty interest protected by due process. *See Rainey v. Dretke*, No. C.A. C-04-525, 2005 WL 1607442, at *5 (S.D. Tex. July 4, 2005) ("To the extent

Rainey is challenging his loss of 45 days commissary and recreation privileges and 15 days solitary confinement, he fails to state a constitutional violation. These punishments are merely changes in the conditions of his confinement and do not implicate due process concerns")(citing *Sandin*, 515 U.S. at 472); *see generally Williams v. Bush*, 95 F.3d 44, 1996 WL 405407, at *1 (5th Cir. 1996) ("Williams was punished with 30 days of recreational restriction, commissary restriction, property restriction, and special cell restriction. This is not sufficient to trigger a liberty interest protected by due process") (citations omitted); *see also Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (30-day commissary and cell restriction punishment did not implicate due process). Plaintiff Birdo also recites that he suffered the punishment of remaining classified at "Line 3," which impacts the rate at which he can earn good-time credits. But other courts have expressly reviewed similar challenges to a Line 3 classification, and found that a Line 3 placement does not impinge upon a liberty interest and does not implicate due process. *See McAllister v. Stephens*, No.2:13-CV-091, 2013 WL 4766694, at * 1 (N.D. Tex. Sep. 5, 2013) (citing *Luken*, 71 F.3d at 193 (holding "[t]he loss of the opportunity to earn good-time credits, which might lead to earlier parole, is a collateral consequence of [petitioner's] custodial status. Yet, such speculative, collateral consequences of prison administrative decision do not create constitutionally protected interests")); *see also Sandoval v. Bickham, et al.*, No. H-09-3636, 2011 WL 666510 at *4 (S.D. Tex. Feb. 14, 2011) ("The punishment assessed in plaintiff's case, i.e., fifteen days cell restriction and placement at classification status Line 3 . . . does not impinge upon a liberty interest and therefore, does not implicate the Due Process Clause) (citation omitted).

Thus, under these holdings applying *Sandin v. Conner* to the same or similar disciplinary punishments imposed upon Birdo, he has not stated a constitutional due process violation in the disciplinary proceedings based upon the actions of defendants Dewbre, Correll, and Robertson.

(II.) Claim Against Barnett and Gonzalez Based Upon Resolution of Grievances

Birdo names as defendants Assistant Warden Adam Gonzales and Assistant Regional Director Barnett. In response to the Court's questionnaire about how these defendants violated his constitutional rights, Birdo alleges that Defendant Gonzales upheld the outcome of the disciplinary proceedings upon review of his Step 1 grievances pursued in each instance, and "failed to do a proper investigation in both Step 1 complaints as a Unit's responsible Assistant Warden provoking Plaintiff to seek relief at Step 2." MDS at 3, (doc. 13). Birdo alleges that Defendant Barnett "upheld a conviction of a disciplinary after being informed of a disciplinary rules violation," and failed to perform a "proper investigation of Plaintiff's Step 2 Complaint" and "upheld the Warden's response at Step 1 do to a lack of proper investigation." MDS at 2 (doc. 13). Thus, Plaintiff challenges each of these defendants for the way they responded to his administrative grievances.

Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a) (West 2012). A prison system is not, however, required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b) (West 2012). Thus, allegations of a delay or denial in the processing of a grievance do not support a constitutional violation. As the United States Court of Appeals for the Fifth Circuit found in *Geiger v. Jowers*:"[ An inmate] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due-process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir.2005); *see also Jenkins v. Henslee*, No. 3-01-CV-1996-R, 2002 WL 432948, at *2 (N.D. Tex. March 15, 2002)("An inmate does not have a constitutional entitlement to a grievance procedure. Hence any alleged violation of the grievance procedure does not amount to a constitutional violation") (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) and *Antonelli v.*

*Sheahan*, 81 F.3d 1422 (7th Cir.1996)). Another district court thus explained "Congress established the exhaustion requirement to give prison and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedure." *Stafford v. McKay,* CA No. 5:10-CV-35, 2010 WL 4274758, at *9 (E.D. Tex. Sep. 27, 2010), *rep. and rec. adopted,* 2010 WL 4286162 (Oct. 28, 2010). Thus, Birdo's claims that Assistant Warden Gonzales and Assistant Regional Director Barnett violated his constitutional rights by the actions taken in resolving his grievances must be dismissed.

(III.) Claims of Violation of Equal Protection of Law

Within his complaint, Plaintiff also writes that his rights to equal protection of law were violated. The Equal Protection Clause prohibits the states from denying persons within their jurisdiction the equal protection of the laws. U.S. CONST. amend XIV, § 1. An equal-protection violation may occur when the government treats someone differently than another who is similarly situated. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The general rule is that state legislation or other state action is presumed valid and will be sustained if the state action is rationally related to a legitimate state interest. *Id.* at 440 (citations omitted). The general rule gives way, however, when state legislation or state action classifies by race, alienage or other suspect class, or when state action impinges on personal fundamental rights protected by the Constitution. *Id.* at 440-41. In such instances, the state law or action is subject to strict scrutiny and will be sustained only if it is suitably tailored to serve a compelling state interest. *Id.*

In this case, Birdo does not allege improper treatment on the basis of being in a suspect class. *See generally Carson v. Johnson,* 112 F.3d 818, 821-22 (5th Cir. 1997) ("Neither prisoners nor indigents constitute a suspect class") (citing *Harris v. McRae,* 448 U.S. 297, 323 (1980) (indigents); and *United States v. King,* 62 F.3d 891, 895 (7th Cir.1995) (prisoners)). And the facts as stated by Birdo do not allege a violation of a fundamental right. Thus, analyzing Birdo's equal-protection claim

under the general rule, the defendants' involvement in presiding over his disciplinary proceedings must only bear a rational relation to a legitimate state interest. *See City of Cleburne,* 473 U.S. at 440-41; *see also Carson,* 112 F.3d at 822 (applying the general standard of rationally related to a legitimate state interest in reviewing indigent prisoners' equal-protection challenge to the Prison Litigation Reform Act) (citing *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) (per curiam)). The focus must be on whether the disciplinary restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987). Corrections officials' ability to segregate an inmate is clearly a legitimate penological objective. *See Bell v. Wolfish,* 441 U.S. 520, 547 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")

Applying these standards to a review of Birdo's claims that he was subjected to a violation of equal protection of law arising from the disciplinary proceedings, Birdo has failed to set forth facts to overcome the presumption that the defendants actions were taken in accordance with legitimate penological objectives. Birdo has failed to state an equal protection claim upon which relief may be granted.

(IV.) Claims under the Eighth Amendment for Cruel and Unusual Punishment

In order to assert a claim for damages for violation of federal constitutional rights under 42 U.S.C. § 1983, a plaintiff must set forth facts in support of the required elements of a § 1983 action: (1) that he has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendants deprived him of such right while acting under color of law. *See West v. Atkins,* 487 U.S. 42, 48 (1988)(citing cases); *Resident Council of Allen Parkway Village v. U.S. Department of Housing and Urban Development,* 980 F.2d 1043, 1050 (5th Cir. 1993). Birdo alleges that Officer Robertson violated his rights under the Eighth Amendment when he knowingly allowed another

inmate out of his cell and then allowed that inmate to throw feces and urine upon Birdo. Compl. At 7, (doc. 1). Birdo separately alleges that his rights under the Eighth Amendment were violated by Defendant Dewbre when she failed to correct the reported violations he presented to her when she later became a grievance investigator. Compl. At 5-6 (doc. 1). The Court thus construes Birdo's pleadings as stating two separate theories of recovery for violations of the Eighth Amendment. First, Birdo alleges that he was placed in danger by Robertson's allowing another offender into the area outside of Birdo's cell with the resulting exposure to the feces and urine throw by the other offender. Compl. at 7 (doc. 1); MDS at 4 (doc. 13). Second, Plaintiff asserts that Defendant Dewbre's actions subjected him to punishments of cell, property, commissary, and recreation restrictions in violation of the Eighth Amendment.

Birdo's first claim under the Eighth Amendment arises from the allegation that Officer Robertson allowed another inmate to throw feces and urine on him. Birdo provides a narrative that Robertson had allowed an unnamed inmate into the dayroom area with a bottle of a liquid substance, and was informed by the other inmate that he "would get [Birdo]." Compl. at 6 (doc. 1); MDS at 4 (doc. 13). Birdo contends that his cell was directly in front of the dayroom. Birdo further alleges that Robertson failed to properly escort the other inmate to the shower, as he walked too far behind the inmate, at which time the inmate threw the liquid material into Birdo's "cell screen window." Compl. at 7 (doc. 1); MDS at 4 (doc. 13). Birdo alleges it was only moments later when the inmate passed back by his cell, that Birdo then threw a cup of water and oatmeal. MDS at 4 (doc. 13.)

Although the Constitution does not mandate comfortable prisons, neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). If conditions for prisoners are "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement.

11

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and 'must take reasonable measures to ensure the safety of inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)(other citations omitted)).

It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer*, 511 U.S. at 832-33. Prison officials are not, however, expected to prevent all inmate-on-inmate violence. *Id.* at 834. Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *See Id.* A prison official is deliberately indifferent if he knows of an "excessive risk to inmate health or safety" and disregards that risk. *Id.* at 837. The Court made clear that a prison official "knows of" an excessive risk only if (1) he is aware of facts from which he could infer "that a substantial risk of serious harm exists" and (2) he in fact "draw[s] the inference."*Id.* In other words, in order to be deliberately indifferent, a prison official must be *subjectively aware* of the risk. *Id.* at 839-40.

Even assuming the allegations are true as written, as the Court must at this stage of review, Birdo's allegations fail to state a claim that Robertson actually knew of a risk of serious harm. At all times recited by Birdo, he was inside his cell, separated from the area of the dayroom by the bars of that cell. The other inmate could not have physically contacted Birdo. There was no possible way that the other inmate was going to be able to physically harm Birdo. Thus, Birdo's allegations do not support a claim of violation of his rights under the Eighth Amendment.

Furthermore, the case and controversy requirement of Article III of the Constitution requires that to proceed in federal court a civil rights complaint must allege an injury, *see O'Shea v. Littleton*, 414 U.S. 488, 493-95 (1974), that is more than trivial or *de minimis*, *see Siglar v. Hightower*, 112 F. 3d 191, 193-94 (5th Cir. 1997). "Minor deprivations suffered for short periods of time will not rise to the level of an Eighth Amendment violation." *Jacobs v. Quinones*, No. 1:10-CV-02349, 2013

WL 144234m, at *7 (E.D. Cal. Jan. 11, 2003) (citations omitted). Here, as to the claim that Birdo was exposed to the one time throwing of urine and feces upon him, even assuming this to be true, such action does not allege a more than *de minimis* claim of physical injury. *See generally Lowe v. Green, et al.*, No.6:07-CV-5, 2007 WL 1217875, at *2-3 (E.D. Tex. April 24, 2007) (recognizing that inmate who urinated on himself after being denied right to leave law library to go to bathroom was a *de minimis* injury) (citing *Alexander v. Tippah Cty.*, 351 F.3d 626, 627-31 (5th Cir. 2003) (holding that inmates exposed to build up of feces and urine in backed-up drain pipe they were forced to use was no more than a *de minimis* physical injury)); *see also Decker v. Dumbar*, 633 F. Supp. 2d 317, 341-42 (E.D. Tex. 2008) (inmate that urinated on himself after being denied access to a restroom while count was completed did not suffer more than *de minimis* physical injury); *see also Fackler v. Dillard*, No. 06-10466, 2006 WL 2404498, at *3 (E.D. Mich. Aug. 16, 2996) (throwing a four ounce cup of urine through an inmate's food slot resulting in urine splashing on the inmate was a *de minimis* use of force); *see also Hendon v. Reed, et al.*, No.1:05-CV-790, 2011 WL 2224720, at * 7 (E.D. Cal. June 7, 2011) (distinguishing cases where courts found Eighth Amendment violations where inmates were exposed to human waste for a period of time, from more temporary events, and finding "Plaintiff's allegation that his own feces was thrown on him and that on another occasion urine was thrown on him do not demonstrate a prolonged or severe deprivation that would rise to the level of a constitutional violation"). Upon application of the law of these similar precedents, the Court finds that Birdo allegations ob being briefly exposed to urine and feces has failed to state a more than *de minimis* injury claim in order to state a claim of a violation of the Eighth Amendment.

Otherwise, Plaintiff Birdo's reference to the Eighth Amendment arises in his challenge to the conduct of Defendant Dewbre arising from the disciplinary proceedings. As noted, the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide

"humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Supreme Court has held, however, that "to the extent prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 346-7 (1981). Birdo's claims challenging his property, commissary, and recreation privileges, and placement in Line 3 class status, do not rise to the level of "unnecessary and wanton" infliction of pain. *Cf Edwards v. Johnson*, 209 F.3d 772, 777-78 (5th Cir. 2000) (finding no constitutional violation in placing an INS detainee in administrative segregation for eleven days before his disciplinary hearing and in disciplinary segregation for fifteen days following the hearing); *Martin v. Scott,* 156 F.3d 578, 580 (5th Cir. 1998) (holding that prisoner's allegations of cruel and unusual punishment based on administrative segregation, including commissary restrictions, were frivolous because such conditions did not rise to the level of cruel and unusual punishment). Birdo's loss of privileges and loss of class level status does not amount to cruel and unusual punishment under the Eight Amendment. As such, all Birdo's claims of an Eighth Amendment violation fail to state a claim upon which relief may be granted.

**B. Limitation Upon Claims for Compensatory Damages under 42 U.S.C. § 1997e(e)**

As noted above, as a part of his request for relief from this Court, Birdo seeks compensatory monetary damages. Compl. at 11 (doc. 1). With the enactment of the PLRA, Congress placed a restriction on a prisoner's ability to recover compensatory damages without a showing of physical injury: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C.A. § 1997e(e) (West Supp. 2017). This physical injury requirement has long been recognized as applying to claims under the Eighth Amendment. *See Herman v. Holiday,* 238 F.3d 660, 665-66 (5th Cir. 2001); *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir. 1999); *Siglar*

v. *Hightower,* 112 F.3d 191, 193-94 (5th Cir. 1997). The United States Court of Appeals for the Fifth Circuit then held that § 1997e(e) applied to claims under the First Amendment as well, noting "it is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers,* 404 F.3d 371, 375 (5th Cir. 2005). More recently, the Fifth Circuit rejected an inmate's claim that § 1997e(e) does not apply to a Fourth Amendment claim arising from a strip search, emphasizing that in *Geiger* the court noted that "1997e(e) applies to *all federal civil actions,*" and noting that "[r]egardless of [Plaintiff's] invocation of the Fourth Amendment, his failure to allege any physical injury preclude his recovery of any compensatory damages for emotional or mental injuries suffered." *Hutchins v. McDaniels,* 512 F.3d 193, 196 (5th Cir. 2007) (emphasis in original). Another district court has applied the language of *Geiger* to hold that an inmate's claims for compensatory damages for violation of the Fourteenth Amendment, without showing physical injury, are barred by § 1997e(e). *See Rogers v. Newman,* No.5:04-CV-193-DCB-JCS, 2006 WL 1520298, at *1 (S.D. Miss. April 7, 2006).

In the Order for a more definite statement, the Court asked Birdo to recite if he suffered any physical injury. In response, Birdo provided that he "does not allege any physical injuries resulting from this complaint." MDS at 4 (doc. 13). Thus, applying the above referenced holdings to the instant case, no matter the substantive constitutional violations asserted by Birdo, his failure to allege physical injury bars any claim for compensatory monetary damages.[2]

**C.     Claims for Declaratory and Injunctive Relief**

Although Plaintiff seeks relief in the form of a declaratory judgment and an injunction, as

---

[2] As noted above, Plaintiff seeks punitive damages. The United States Court of Appeals for the Fifth Circuit has recognized that § 1997e(e) does not preclude claims for nominal or punitive damages. *See Hutchins v. McDaniels,* 512 F.3d 193, 198 (5th Cir. 2007).

he has not otherwise stated viable claims upon which relief may be granted, he is not entitled to declaratory or injunctive relief.

### V. ORDER

It is therefore **ORDERED** that all Plaintiff's claims are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B)(ii).

SIGNED April 20, 2018.

_____
E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE